# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| GEORGETTE LONG, | § § § § | |
| *Plaintiff*, | § § | |
| versus | § § § | CIVIL ACTION NO. 3:12-578 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | § § § § § | |
| *Defendant.* | § § | |

## **REPORT AND RECOMMENDATION**

Georgette Long ("Long") brings this action under 42 U.S.C. § 405(g), seeking review of an adverse decision on her application for disability-based Supplemental Security Income benefits under the Social Security Act. Complying with General Order # 18 (Dkt. No. 3), the parties join issues through competing briefs.[1]

A reviewing court's limited role is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, ___U.S.___, 130 S. Ct. 1503 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g). Reviewing courts cannot retry factual issues *de novo* or substitute their interpretations of administrative records for that of the Commissioner when the

---

[1] *See* General Order #18 dated September 23, 2003 (superseding January 24, 2002 and September 19, 2001 general orders). (Dkt. No. 3).

record contains substantial support for the decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). Neither can reviewing courts overturn the Commissioner's administrative rulings because they would have reached a different conclusion had the matter come before them in the first instance. *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012).

## I. Background

Long's application claimed disability due to degenerative disc disease and depression. (T. 12, 84-87, 99).[2] Administrative law judge, John P. Ramos ("ALJ Ramos"), conducted a video conference evidentiary hearing, and eventually issued a written decision denying Long's application. (T. 12-20). After unsuccessfully requesting Appeals Council review, Long timely instituted this proceeding. (Dkt. No. 1).

## II. Commissioner's Decision

ALJ Ramos utilized a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way for determining disability applications in conformity with the Social Security Act. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

ALJ Ramos determined that Long has several severe impairments, including degenerative disc disease of the lumbar spine, asthma, depression, adjustment disorder with depressed mood, and bereavement. (T. 14). These

---

[2] "T." followed by a number refers to the page of the administrative record. (Dkt. No. 9).

impairments reduce Long's ability to perform work-related activities to the "sedentary" exertional level.³ Even at that diminished level, Long cannot perform a full range of sedentary work. One limitation at that exertional level is that she should avoid exposure to respiratory irritants.⁴ (T. 16).

ALJ Ramos found that Long has moderate difficulties with regard to concentration, persistence or pace. (T. 15). He did not, however, impose any limitations on Long's *mental* residual functional capacity arising from such difficulties. Rather, he found that Long retains ability to understand and follow simple and complex instructions and directions. (T. 16). She can perform simple and complex tasks with both supervision and independently. *Id*. She also can maintain attention and/or concentration for tasks, regularly attend to a routine, maintain schedule, relate to and interact appropriately with others, and handle reasonable levels of work related stress. *Id*.

Under the sequential evaluation process, Long proved a *prima facie* case of disability.⁵ Thus, she was eligible for benefits unless, at Step 5, ALJ Ramos determined, after considering Long's age, education, work experience, and residual functional capacity, that jobs exist in significant numbers in the

---

³ Sedentary work is the lightest exertional category. It "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a). Although sedentary work involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. *Id*.

⁴ The other limitations on a full range of sedentary work imposed by ALJ Ramos are: "the claimant is limited to occasionally lifting and/or carrying of ten pounds, and may lift and/or carry less than ten pounds frequently. The claimant can stand and/or walk at least two hours out of an eight hour workday, and is able to sit for about six hours out of an eight hour workday. She is able to occasionally climb ramps and/or stairs and occasionally balance, stoop, kneel, crouch and crawl." (T. 16).

⁵ *See Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984).

national economy that Long can perform.[6] Relying on Medical-Vocational Rule 201.24, ALJ Ramos determined that such jobs exist, and that a conclusion of "not disabled" is appropriate under the framework of that rule. (T. 20).

### III. Points of Error

Long's brief identifies three "Issues Presented." Including subparts, these issues allege four distinct errors.[7] The only point addressed in this report is the first one, which argues that ALJ Ramos erred in relying on Medical-Vocational Rule 201.24. Long argues that testimony from a vocational expert was necessary to find that jobs exist in significant numbers that Long can perform, and lack of such testimony deprives the finding of substantial evidentiary support.

---

[6] *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *see also DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998); *Berry*, 675 F.2d at 467; 20 C.F.R. § 416.966.

[7] Verbatim, Long's "Issues Presented" are:

1. Did Administrative Law Judge (ALJ) properly determine this case without calling upon the services of a vocational expert?
   A. Did ALJ properly find, without the services of a vocational expert, that there were jobs in significant numbers in the National, Regional, or Local economy given the limitation in ALJ's Residual Functional Capacity (RFC) finding that Plaintiff was limited to sedentary work needing to avoid exposure to respiratory irritants?
   B. Did ALJ properly find that there were jobs in the National, Regional, and Local economy given ALJ's factual finding that Plaintiff was moderately limited in her ability to concentrate, be consistent, or work at a reasonable pace together with the limitation to sedentary work and the need to avoid exposure to respiratory irritants?
2. Did ALJ properly determine the credibility of the Plaintiff?
3. Did ALJ properly assess medical opinions of record including, but not limited to, treating source opinion, and as such was the ALJ's residual functional capacity supported by substantial evidence?

(Dkt. No. 12, pp. 1, 7-10).

## IV. Discussion

*A.    Evidence Supporting Step 5 Findings*

    1.    <u>Conventional Sources</u>

Generally, at Step 5, the Commissioner elicits or consults two principal sources of evidence relevant to whether claimants can perform alternative, available work. Witnesses qualified as "Vocational Experts" may testify as to whether jobs exist for a person with the claimant's precise abilities. *See* 20 C.F.R. § 416.966(e); *see also* SSR 00-4p, POLICY INTERPRETATION RULING: TITLES II AND XVI: USE OF VOCATIONAL EXPERT AND VOCATIONAL SPECIALIST EVIDENCE, AND OTHER RELIABLE OCCUPATIONAL INFORMATION IN DISABILITY DECISIONS, 2000 WL 1898704, at *1-2 (SSA Dec. 4, 2000). Second, a United States Department of Labor publication titled *Dictionary of Occupational Titles* ("DOT") may assist determinations that a claimant's residual work skills can be used in other work, and the specific occupations in which they can be used.[8] *See* 20 C.F.R. § 416.966(d)(1); *see also* SSR 00-4p, 2000 WL 1898704, at *1-2. Both evidentiary sources can provide substantial evidence supporting the Commissioner's Step 5 determination. *See Canton v. Astrue*, No. 08–CV–3038 (NGG)(JO), 2010 WL 5391184, at *6 (E.D.N.Y. Dec. 22, 2010) (reliance on *Dictionary of Occupational Titles*); *Fox v. Commissioner of Soc. Sec.*, No.

---

[8]    The *Dictionary of Occupational Titles*, published by the United States Department of Labor, is a comprehensive listing of job titles in the United States. Detailed descriptions of requirements for each job include assessments of exertional level and reasoning ability necessary for satisfactory performance of the work. For Social Security proceedings, the Commissioner routinely takes administrative notice of job information contained in DOT when determining whether work exists in significant numbers in the national economy which the claimant can perform at his or her residual functional capacity. *See Townley v. Heckler*, 748 F.2d 109, 113 (2d Cir. 1984); *see also* 20 C.F.R. §§ 416.966(d)(1), 416.966(e); *see also* SSR 00-4p, 2000 WL 1898704, at *1-2.

6:02–CV–1160 (FJS/RFT), 2009 WL 367628, *15 (N.D.N.Y. Feb. 13, 2009) (administrative law judge may utilize services of a vocational expert).

2. Administrative Notice

In limited circumstances, the Commissioner can consult *"Medical Vocational Guidelines,"* commonly called *"the grids." Roma v. Astrue*, 468 Fed. App'x 16, 20-21 (2d Cir. 2012); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2. The grids are a matrix of general findings – established by rule – as to whether work exists in the national economy that a person can perform. "The grids take into account a claimant's RFC, as well as her age, education, and work experience." *Calabrese v. Astrue*, 358 Fed. App'x 274, 276 & n. 1 (2d Cir. 2009) (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)). Ultimately, the grids yield a decision of "disabled" or "not disabled." *Zorilla v. Chater*, 915 F. Supp. 662, 667 & n. 2 (S.D.N.Y. 1996) (citing 20 C.F.R. § 404.1567(a)).

The Commissioner's Step 5 burden can be met by consulting the grids (*i.e.*, without eliciting vocational expert testimony or equivalent evidence) only when a claimant's impairments are purely *exertional* in nature.[9] When an administrative law judge's findings of residual functional capacity, age, education, and previous work experience coincide with the grids, the Commissioner may directly apply the grids to determine whether work exists in the national economy which claimants can perform. *See Martin v. Astrue,* 337

---

[9] "An exertional impairment is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet . . . strength demands of jobs (*i.e.*, sitting, standing, walking, lifting, carrying, pushing, and pulling)." *Bogardus-Fry v. Astrue*, No. 7:11-CV-883 (MAD), 2012 WL 3779132, at *15 n. 14 (N.D.N.Y. Aug. 31, 2012) (citing 20 C.F.R. § 416.969a(b); *Rodriguez v. Apfel*, No. 96 Civ. 8330(JGK), 1998 WL 150981, at *10, n. 12 (S.D.N.Y. Mar. 31, 1998)).

Fed. App'x 87, 91 (2d Cir. 2009); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2; *see also Thompson v. Barnhart*, 75 Fed. App'x 842, 844 (2d Cir. 2003) (Commissioner can meet Step 5 burden "by resorting to the applicable medical vocational guidelines (the grids)"). When direct application of the grids is appropriate, the grids alone constitute substantial evidence sufficient to uphold a Commissioner's decision. *See Clark v. Sullivan*, 891 F.2d 175, 179 (7th Cir. 1989).[10]

### 3. The "Framework Exception"

The grids fail to take into account *nonexertional* impairments.[11] *See Bapp*, 802 F.2d at 605. When claimants' nonexertional impairments significantly diminish their ability to work, the grids, alone, do not accurately determine disability status. *See Calabrese*, 358 Fed. App'x at 276-77. Consequently, the

---

[10] The United States Supreme Court upholds the validity and use of the medical-vocational grids. *See Heckler v. Campbell*, 461 U.S. 458, 468 (1983). Lower courts repeatedly state that medical-vocational grids, when used properly, provide substantial evidence for determining whether jobs exist that claimants can perform. *See Zharn v. Commissioner of Soc. Sec.*, 35 Fed. App'x 225, 228 (6th Cir. 2002); *Justiniano v. Commissioner of Soc. Sec.*, No. 6:11-cv-1576-Orl-GJK, 2013 WL 625545, at **4-5 (M.D. Fla. Feb. 20, 2013); *Vargas v. Astrue*, No. 09 Civ. 6606(BSJ)(DF), 2011 WL 9518014, at *14 (S.D.N.Y. Nov. 8, 2011).

[11] A nonexertional impairment is "[a]ny impairment which does not directly affect [the strength demands of work such as] the ability to sit, stand, walk, lift, carry, push, or pull. This includes impairments which affect the mind, vision, hearing, speech, and use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use of the fingers for fine activities." SSR 83-10, TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK–THE MEDICAL-VOCATIONAL RULES OF APPENDIX 2, 1983 WL 31251, at *6 (SSA 1983). Examples of nonexertional limitations are as follows: nervousness, anxiety, and depression; inability to maintain attention or concentrate; difficulty understanding or remembering detailed instructions; difficulties with sight or hearing; difficulty tolerating some physical feature(s) of certain work settings, *e.g.*, inability to tolerate dust or fumes; and difficulty performing manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. *See* 20 C.F.R. § 416.969a(c)(1)(i)-(vi).

Environmental restrictions are considered to be nonexertional. *See* SSR 96-9, POLICY INTERPRETATION RULING TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK–IMPLICATIONS OF A RESIDUAL FUNCTIONAL CAPACITY FOR LESS THAN A FULL RANGE OF SEDENTARY WORK, 1996 WL 374185, at *5 (SSA July 2, 1996).

grids cannot be applied directly to determine whether work exists in the national economy which claimants can perform. *Rosa*, 168 F.3d at 78, 82; *Bapp*, 802 F.2d at 605-06.

Although the grids cannot be applied directly in such instances, they are not necessarily a bursting bubble. The Commissioner's regulation permits administrative law judges to consult Medical-Vocational Guidelines as a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by . . . nonexertional limitations." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2).[12] Thus, the grids can remain in a case and continue to carry significant evidentiary weight.

Two Social Security rulings address this "framework" analysis. *See* SSR 85-15, TITLES II AND XVI: CAPABILITY TO DO OTHER WORK – THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING SOLELY NONEXERTIONAL IMPAIRMENTS, 1985 WL 56857, at *3 (SSA 1985); *see also* SSR 83-14, TITLES II AND XVI: CAPABILITY TO DO OTHER WORK – THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING A COMBINATION OF EXERTIONAL AND NONEXERTIONAL IMPAIRMENTS, 1983 WL 31254, at **2, 4 (SSA 1983). They direct that when a claimant has both exertional and nonexertional impairments, an administrative law judge should first consult the grids, along with consideration of the claimant's RFC and vocational factors, to determine the extent of impairment caused by *exertional* limitations. When the degree of impairment caused by an

---

[12] *See also* 20 C.F.R. § 416.969a(d) ("If your impairment(s) and related symptoms, such as pain, affect your ability to meet both the strength and demands of jobs other than the strength demands, we will not directly apply the rules in appendix 2 unless there is a rule that directs a conclusion that you are disabled based upon your strength limitations; otherwise the rules provide a framework to guide our decision.").

exertional impairment, alone, is such that a claimant is deemed disabled under a grid rule, the inquiry ceases, and benefits are awarded.

If exertional impairments are not that debilitating, an administrative judge should next determine how much a claimant's "occupational base," (the entire exertional span from sedentary work through heavy work), is *further reduced* by effects of *nonexertional* impairments.[13] When claimants can be expected to make vocational adjustments, and, despite all impairments, still have a large potential occupational base, they ordinarily will not be found disabled under a "framework" analysis. *Id.* This erosion-of-occupational-base analysis generally contemplates at least some evidence in addition to the grids. *See Bapp,* 802 F.2d at 606 (when nonexertional limitations significantly diminish a claimant's ability to perform the full range of work, testimony of either a vocational expert or other similar evidence regarding the existence of jobs in the national economy for an individual with claimant's limitations is required); *Rosa*, 168 F.3d at 78; *see also Heckler*, 461 U.S. at 462 n. 5 ("If an individual's capabilities are not described accurately by a rule, the regulations make clear that the individual's particular limitations must be considered."); *Butts v. Barnhart*, 388 F.3d 377, 383–84 (2d Cir. 2004) (if the grid fails "to describe the full extent of [the] claimant's physical limitations," the Commissioner must introduce testimony to prove "that jobs exist in the economy which the claimant

---

[13]  "Occupational base" is defined as:

```
The number of occupations, as represented by RFC, that an individual
is capable of performing. These "base" occupations are unskilled in
terms of complexity. The regulations take notice of approximately
2,500 medium, light, and sedentary occupations; 1,600 light and
sedentary  occupations;  and  200  sedentary  occupations.  Each
occupation represents numerous jobs in the national economy. (In
individual situations, specific skilled or semiskilled occupations
may be added to the base.).
```
SSR 83-10, 1983 WL 31251, at *7.

can obtain and perform"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir.2005); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e).

To summarize, when both exertional and nonexertional impairments are present, an administrative law judge theoretically can find a claimant *disabled* when a grid directs such a finding solely on the basis of severity of exertional impairments. But, when exertional impairments alone direct a grid finding of *not disabled*, an administrative judge next must determine (usually from other evidence) how much nonexertional impairments further diminish that claimant's occupational base. Only when a large occupational base remains can an administrative judge then deny a claim using the grids as a framework.

B.  *Application and Analysis*

ALJ Ramos found that Long has mental disorders and asthma. He found all these conditions to be severe impairments, as that term is defined in social security parlance.[14] By definition, mental impairments and physical impairments requiring environmental limitations are nonexertional in nature. *See* n. 11, *supra*.

ALJ Ramos recognized them as such, and understood that he could not apply the grids directly to determine whether alternative work exists that Long can perform. Rather, in Long's case, the grids could only serve as "a framework for decisionmaking." (T. 19). ALJ Ramos did not, however, elicit testimony of either a vocational expert or other similar evidence regarding the existence of jobs in the national economy for individuals with Long's mental impairments and environmental limitations. Consequently, the specter of error looms large.

---

[14]  "Severe" is a term of art. The Commissioner's regulation defines a severe impairment as one "which significantly limits . . . physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).

The possibility remains, however, that some other rule contains administratively-noticed facts constituting the necessary evidence. With respect to mental impairments, SSR 85-15 states in part:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.

SSR 85-15, 1985 WL 56857, at *4. This Ruling further states that the occupational base for such work is severely eroded *only* when a claimant has a substantial loss of ability to meet any of these basic demands. *Id.*

ALJ Long cited this Ruling. He found from evidence before him that Long is able to follow simple and complex instructions and directions; she is able to perform simple and complex tasks with both supervision and independently; she can maintain attention and/or concentration for tasks, regularly attend to a routine, maintain a schedule, relate and interact appropriately with others, and handle reasonable levels of work related stress. (T. 20). Since these findings exactly match the Ruling's parameters of mental capacity for unskilled sedentary work, ALJ Ramos was entitled to rely on the Ruling's administratively-noticed fact that the occupational base is not severely eroded for a person with such mental capacities. Therefore, substantial evidence supports ALJ Ramos's finding that Long's nonexertional *mental* impairments do not significantly reduce her occupational base, and the grids provided a framework for deciding that Long's mental impairments are not disabling.

The same cannot be said with respect to Long's *environmental* limitation.[15] In fact, *nothing* can be said because ALJ Ramos's "framework" analysis is completely silent on that topic. After addressing Long's nonexertional mental impairments, ALJ Ramos's analysis simply stops. (T. 20). There is no mention of Long's nonexertional *environmental* limitation, and there is no erosion-of-occupational-base analysis with respect to that limitation. *Id.* It is as if ALJ Ramos inadvertently forgot this nonexertional impairment.

The brief submitted on behalf of the Commissioner proffers two resourceful arguments which contend that no evidence from a vocational expert regarding erosion of Long's occupational base was necessary. First, the brief contains an elliptic assertion that "SSR 96-9p expands on the implications of an RFC assessment for less than sedentary work because of environmental restrictions." (Dkt. No. 15, p. 15). While somewhat blurred, the gist of this argument seems to be that when a claimant cannot perform a full range of sedentary work because of a nonexertional environmental limitation, SSR 96-9p, supplies the missing evidentiary link through administratively-noticed facts.

SSR 96-9p does, indeed, address implications of residual functional capacity for less than a full range of sedentary work as it relates to claimants' capabilities to do other work. *See* SSR 96–9p, 61 Fed. Reg. at 34481. With respect to environmental restrictions, the Ruling contains an administrative-notice finding that few occupations in the unskilled sedentary base require work in *extreme* environmental conditions involving cold, heat, wetness, humidity or *unusual* hazards, including exposure to toxic, caustic chemicals. *Id.*, at 34483. The Ruling then states that "[e]ven a need to avoid all exposure to these

---

[15] ALJ Ramos found that Long's asthma requires that she avoid work involving exposure to respiratory irritants. (T. 16).

conditions would not, by itself, result in a significant erosion of the occupational base." *Id*.

The Commissioner's brief infers that this provides administratively-noticed evidence that Long still has a large occupational base despite her environmental limitation to avoid respiratory irritants. If so, grid rule 201.24 properly was used in a framework context for finding that Long can perform existing jobs, and for concluding that she is "not disabled."

This argument is not persuasive for several reasons. First, it is misdirected. The quoted provision above constitutes administrative notice only with respect to certain *extreme* environmental conditions and *unusual* hazards rarely required in sedentary, unskilled work. Second, with respect to other potential respiratory irritants encountered more frequently in the workplace – such as restrictions to avoid exposure to odors or dust – the Ruling directs that evaluations must be conducted *on an individual basis. See* SSR 96–9p, 61 Fed. Reg. at 34483. Further, a residual functional capacity assessment must specify which environments are restricted and state the extent of the restriction, "*e.g.*, whether only excessive or even small amounts of dust must be avoided." *Id*.

This latter requirement dovetails with SSR 85-15 which lists three magnitudes of environmental limitations, and makes findings with respect to each as to its effect on work at all exertional levels. *See* SSR 85-15, 1985 WL 56857, at *8. A restriction to avoid *excessive* amounts of respiratory irritants such as dust has minimal impact because most job environments do not involve great amounts of dust. *Id*. But, when an individual can tolerate *very little* amounts, the impact is considerable. *Id*. Finally, an environmental restriction falling in the middle requires consultation of occupational reference materials

or services of a vocational specialist to determine the degree that a claimant's occupational base is eroded. *Id*.

Whatever the precise relationship between these two Rulings, ALJ Ramos complied with neither. He did not conduct an erosion-of-occupational-base analysis with respect to Long's environmental restriction as required by SSR 85-15. *See* SSR 85-15, 1985 WL 56857, at *8. He did not conduct an individualized evaluation, nor did he specify which environments are restricted, or state the extent of the restriction as required by SSR 96-9p. *See* SSR 96–9p, 61 Fed. Reg. at 34483. He did not establish a magnitude of Long's environmental restriction as required by both Rulings. Under this circumstance, the court cannot accept an invitation to conclude that SSR 96-9p provides the necessary evidence.

The second inventive argument asserts that ALJ Ramos already had ample evidence from which to conclude that Long's occupational base for sedentary work with an environmental limitation is not eroded substantially. (Dkt. No. 15, pp. 15-17). The Commissioner's brief painstakingly summarizes medical and other evidence indicating that Long's asthma is mild and well-controlled despite her long history as a smoker. *Id.*, pp. 15-16. It emphasizes that Long's application did not claim asthma as a disabling impairment, and that Long disavowed asthma alone as a disabling condition in her testimony. *Id.*, pp. 16-17.[16] It concludes: *"The ALJ, taking into consideration the specific nature and extent of plaintiff's asthma, correctly concluded that plaintiff's non-exertional environmental restriction did not significantly reduce plaintiff's occupational base." Id.,* p. 17.

---

[16] Long testified that her asthma would not stop her from working and that only her back problems would prevent gainful employment. (T. 50-51).

This argument has seductive appeal, as common experience suggests that a medical condition well-controlled by conservative treatment, and one not considered disabling by a person afflicted therewith, probably does not significantly erode that person's occupational base. Its charm, however, must be resisted. First, it is too much of a stretch to say that ALJ Ramos took into consideration the specific nature and extent of plaintiff's asthma. As mentioned earlier, ALJ Ramos's "framework" analysis is totally silent with respect to Long's asthma. The only rationale given by ALJ Ramos for concluding that Long's nonexertiontal limitations do not significantly reduce her occupational base relates to Long's mental capacity, not functional effects of respiratory irritants. (T. 20).

Second, Long's subjective view of the impact of asthma on her ability to work is no more competent than opinions of treating physicians, administrative law judges or reviewing court judges on the subject of an available occupational base. The Commissioner recognizes only "occupational reference materials or services of a [Vocational Specialist]" as authoritative evidence on this abstruse subject. *See* SSR 85-15, 1985 WL 56857, at *8.

Third, proceedings before the Commissioner are not adversarial. They are remedial in nature. *See Moran v. Astrue*, 569 F.3d 108, 112–13 (2d Cir. 2009); *see also Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999). Thus, the Commissioner cannot now rely on an "admission against interest" as might be the case in a purely forensic matter.[17]

In sum, once ALJ Ramos found Long's asthma to be a severe impairment requiring a nonexertional environmental limitation to her residual functional

---

[17] Because the decision is silent, there is no indication that ALJ Ramos actually relied on Long's opinion that asthma does not prevent her from working.

capacity for even sedentary work, he triggered a Step 5 evidentiary burden to show that Long can perform some available work with that limitation. ALJ Ramos could not apply the grids directly because they do not factor severe nonexertional impairments into the available occupational base. He could not apply them indirectly as a "framework" because (a) the environmental limitation was articulated so indistinctly that it does not match up with administratively noticed facts in either SSR 85-15 or SSR 96-9p, (b) he did not obtain authoritative occupational reference materials or services of a Vocational Specialist to provide that evidence, and (c) he did not undertake an erosion-of-occupational-base analysis.

The inexorable result is that substantial evidence does not support a finding that jobs exist that Long can perform with a residual functional capacity for a limited range of sedentary work and a nonexertional limitation requiring that she avoid exposure to respiratory irritants.

## V. Recommendations

1. The Commissioner's decision should be **REVERSED** and the case **REMANDED** pursuant to 42 U.S.C. § 405(g), sentence four, for receipt of evidence regarding the extent that Long's nonexertional environmental limitation further diminishes her occupational base.

2. To guard against necessity for further actions seeking judicial review, the court should request the Commissioner, upon remand, to review his decision in light of all other errors Long asserts in this action.

## VI. Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the __23__ day of ____May____ 2013.

*Earl S. Hines* (signature)

Earl S. Hines
United States Magistrate Judge